HOLLAND FURNACE CO. v. BIRD
(No. 1786; May 2, 1933; 21 Pac. (2d) 825)

For the appellant, there was a brief by *Samuel Corson*, of Evanston, Wyoming, and *Roberts & Roberts*, of Salt Lake City, Utah, and oral argument by *Mr. Ben E. Roberts*.

For the respondent, there was a brief and oral argument by *P. W. Spaulding*, of Evanston, Wyoming.

RINER, Justice.

The Holland Furnace Company brought a replevin action in the District Court of Uinta County to recover a warm air furnace or "heater," as it is designated in its petition, which it had theretofore installed in the basement of a dwelling house in Evanston, Wyoming. Joseph Bird, at first the mortgagee and ultimately the owner of the premises, defended the action. Judgment was given that the plaintiff take nothing in the proceeding and that "the defendant is entitled to the possession and property in" said furnace. The plaintiff has brought the case here by direct appeal. The record discloses the following facts: On March 11, 1930, Mrs. Mima E. Brough was the owner of a dwelling house in Evanston, Wyoming, on which she had in 1920 given a regularly recorded mortgage to Joseph Bird and which, on the date first above mentioned, was still in force and the obligation secured thereby unpaid. On that date she entered into a written contract with the Holland Furnace Company, under which the latter installed in the basement of the house aforesaid a "No. 4000-B Roper Warm Air Heater," the chattel in controversy now. The furnace was set on a cement base and held in place thereon merely by its own weight. It was connected with the building by means of a smoke pipe to the flue, pipes supplying the gas for fuel, and by cold and hot air runs, these last being covered with asbestos paper which extended a few inches therefrom upon the furnace itself, the paper being used for insulation purposes and also to make the joints in the pipes air tight. It also appears that some time in the year 1929 the Holland Furnace Company removed from the house aforesaid an old coal burning furnace and put in a gas burning furnace which was not satisfactory and which was replaced by the "4000-B Roper" heater, aforesaid. The

written contract above mentioned also provided for the installation of "warm air faces, stacking, boxing, regulator, and all other fittings" necessary to make the heating device work properly, for which a price of $400 was to be paid, the amount due for the heater being fixed at $360. These amounts were to be paid by Mrs. Brough in specified installments.

One of the paragraphs of the agreement between Mrs. Brough and the Holland Furnace Company read as follows:

"The heating and piping in basement shall remain personal property at all times and the title thereto shall remain in us until you make final payment therefor, whereupon title shall vest in you as buyer. If any payment is not made on the date when it becomes due, as herein provided, all the unpaid balance shall immediately become due and payable. In case default is made in any payment when due, we retain and shall have the right to remove the heater and piping in basement and retain all payments made hereunder as and for the reasonable rental thereof. No action to enforce any rights under Mechanic Lien Laws or any similar laws shall prejudice our right to remove the heater and piping on default of payment as provided above."

The complete installation called for by the contract appears to have been made by the Holland Furnace Company, but the only article sought by this action to be removed from the building is the heater. This change in the heating system in the house was made without the knowledge or consent of the mortgagee.

It developed in the summer of 1930 that Mrs. Brough became unable to meet either the payments due on the mortgage to Mr. Bird or those due on the furnace contract. Accordingly, on August 5th of that year, she gave him a deed to the premises, as she herself testifies, "to save him the expense of foreclosing." Bird declined to allow the Holland Furnace Company to remove the heater

although the amount due thereon had not been paid. The replevin action was accordingly instituted as previously stated. It was stipulated between the parties at the commencement of the action that it should be construed as one for replevin and that the furnace involved should remain in the premises, as now located, during the pendency of the action "without prejudice to the claims of either party thereto, as the same may be made" therein. Such other facts as may be necessary to an understanding of the questions presented for determination will be mentioned in connection with their discussion.

The District Court, in its judgment, found that there was no "competent proof" of the "corporate capacity of the plaintiff" and this is assigned and argued as error. Plaintiff's petition alleged in substance that it was a corporation organized and existing under the laws of the State of Michigan and that it had complied with and was authorized to do business under the laws of this state. The defendant's answer merely denied this allegation. It may be conceded that plaintiff did not properly prove that it was a corporation, but that matter was not an issue in the case. This is settled by the decision of this court in Pennoyer v. Dubois State Bank, 35 Wyo. 319, 249 Pac. 795, 796, where it was said, upon cited authorities:

"The plaintiff did not prove the allegation that it was a corporation. The defendant contends that that allegation was material to plaintiff's cause of action, and was put in issue by the general denial. The general, and what we consider the better, rule is to the contrary."

The language of the Supreme Court of Ohio in Brady v. The National Supply Company, 64 O. St. 267, 60 N. E. 218, 219, 83 Am. St. Rep. 753, is thereafter quoted to the following effect:

478

"To raise the issue of *nul tiel corporation*, the defendant must specially plead in his answer that the plaintiff is not a corporation."

It is evident, therefore, that the finding of the trial court was without effect so far as the correct disposition of this case was concerned.

In support of the judgment under review, it is urged that there was no reservation of title to the furnace in favor of the plaintiff and that, as it was attached to the dwelling house, it became a fixture. This is said because of the language in the contract quoted above and reading: "The *heating* and piping in basement shall remain personal property at all times and the title thereto shall remain in us until you make final payment therefor, whereupon title shall vest in you as buyer." It is claimed that the word "heating" is without meaning. In Weed v. Abbott, 51 Vt. 609, quoting from an earlier decision in the same jurisdiction, the court said:

"The principle is well settled in this state and elsewhere, that when it is perfectly apparent upon the face of a written instrument that a mere clerical error has been made, and when it is apparent from the face of the instrument what the correction should be to make the instrument what it would have been if the error had not occurred, courts will correct such error by construction, that is, they will treat the instrument the same, and give it the same legal effect and operation, as though the error had not been made."

Accordingly, it was held that, as it appeared from the instrument, (a bond) that the wrong name had been inserted therein through a clerical error, it was the duty of the court to construe the instrument as though it had the correct name inserted. And this court has said, in Pacific-Wyoming Oil Company v. Carter Oil Company, 31 Wyo. 314, 327, 226 Pac. 193, 197, that:

"The situation of the parties when the contract was made, its subject matter, and the purpose of its execution are material to determine the intention of the parties and the meaning of the terms they used, and when these are ascertained, they must prevail over the dry words of the stipulation."

It seems obvious to us that the use of the word "heating" in the quoted sentence from the furnace contract was merely a clerical error, in the printed form, for the word "heater." The balance of the contract shows the repeated use of the phrase "heater and piping" and renders it clear that it was intended by the parties to be also employed in the sentence aforesaid. The language of the second sentence thereafter following, itself indicates this, as it reads: "In case default is made in any payment when due, we retain and shall have the right to remove the heater and piping in basement." We shall, therefore, consider the contract as reading: "The heater and piping in basement shall remain personal property at all times, etc."

Notwithstanding this contractual reservation of title to the furnace in the plaintiff until full payment of the purchase price thereof was made, it is argued for respondent, as the trial court found, that the heater became a fixture so far as the rights of Bird, the mortgagee and subsequent owner, are concerned, when it was installed in the basement of the dwelling house in the manner above described.

It has been said upon abundant authority that, generally speaking, the proper criterion of an irremovable fixture consists in the united application of three tests, viz.:

"1st. Real or constructive annexation of the article in question to the realty.

"2d. Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

"3d. The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of

the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made.''

Ewell on Fixtures (2d Ed.) 27-28. To the same effect, in substance, is 11 R. C. L. 1059, § 3. The text first cited further states that:

''Of these three tests, the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accesssion to the freehold, and the others seem to derive their chief value as evidence of such intention.''

In the legion of cases which arise in connection with this branch of the law, it may well be that the test suggested above can not be regarded as all inclusive.

There seems to be a difference of opinion among the courts of this country as to the right of a prior mortgagee of real property to claim a chattel attached thereto so as ordinarily to constitute a fixture, as against the unpaid vendor thereof, where there is an agreement between the latter and his vendee, the mortgagor, that the title to the property sold shall remain in the seller until payment and shall until then be regarded as personalty. There is the so-called Massachusetts rule which holds that, with respect to prior mortgagees of realty, an agreement between the mortgagor and the vendor of a chattel, that the title to it shall remain in the seller after it is affixed to the realty, is invalid, the view being that all fixtures are covered by the mortgage and the mortgage contract cannot be changed by an agreement to which the mortgagee is not a party. Meagher v. Hayes, 152 Mass. 228, 25 N. E. 105, 23 Am. St. Rep. 819; Fuller-Warren Company v. Harter, 110 Wis. 80, 85 N. W. 698, 53 L. R. A. 603, 84 Am. St. Rep. 867;

Tippett & Wood v. Barham, 180 Fed. (C. C. A. 4th Cir.) 76, 37 L. R. A. (N. S.) 119; 26 C. J. 685; 13 A. L. R. 471, note.

But a different view is taken by the weight of authority. Under it, the intention manifested by the conditional sale agreement to retain title in the vendor and to preserve the character of the chattel as personalty after annexation to the real property, prevails against the prior mortgagee of the realty, so that the chattel can be removed by the seller for the vendee's failure to perform the contract, unless its severance will so injure the freehold as substantially to diminish the creditor's original security. The reason is that, as the mortgage is merely security, the mortgagee has advanced nothing in reliance on the value of the subsequently annexed chattels and he should not be permitted to acquire them as a part of his security, contrary to the intention of the party making the annexation and to the injury of the seller. 26 C. J. 684, § 49, and cases cited; 13 A. L. R. 461, note; 23 A. L. R. 806, note; Industrial Bank of Richmond v. Holland Furnace Company, 109 W. Va. 176, 153 S. E. 309, 310; Holland Furnace Company v. Lowe, 172 Ga. 815, 159 S. E. 277; Smith v. Holland Furnace Company, 128 Kan. 580, 278 Pac. 719; Holt v. Henley, 232 U. S. 637, 34 S. Ct. 459, 58 L. Ed. 767; Detroit Steel Cooperage Company v. Sistersville Brewing Company, 233 U. S. 712, 34 S. Ct. 753, 58 L. Ed. 1166.

In the case at bar, the testimony on the part of both the plaintiff and defendant is to the effect that the furnace can be removed from the dwelling house without injury to the latter, the only things necessary to be done to accomplish the severance being to unscrew pipe unions as to the gas fuel feed, remove the smoke pipe from the heater by simply slipping it off of the casting and disconnect the furnace from the hot and cold air pipes by slipping them apart, at the same time breaking the asbestos paper covering at the location of the joints. In all of

the Holland Furnace Company cases cited above, where there were contracts with provisions similar to the contract at bar and where the installation processes were similar to that pursued in this case, it was held that the furnaces were removable as against a prior mortgagee or one occupying a similar situation. For example, in Industrial Bank of Richmond v. Holland Furnace Company, supra, the contract contained the clause, "The furnace and piping in basement shall remain personal property at all times and the title thereto shall remain in us until final payment therefor, with the right in us to remove same in default of payment." There appeared, as facts in that case, that the furnace "was set up in the basement of the residence but was not attached to the floor, being held in place by its own weight. At each connection with a hot or cold air pipe, was a collar, two screws, and a wrapping of asbestos.

"The plaintiff had no knowledge of the sales contract, and it was not recorded. On January 12, 1929, the residence was sold under the deed of trust, the plaintiff becoming the purchaser. The deed from the trustees recited a consideration of $300. Subsequently defendant asked permission of plaintiff to remove the furnace, which was refused." The court, in the course of the opinion disposing of the legal questions involved, said:

"As the furnace was connected with the piping in such a manner that it could be detached without damage to the building, the intention of the parties when it was installed becomes the controlling factor in whether it became a fixture. Bronson on Fixtures, § 21 (d); Ewell on Fixtures (2d Ed.) 30, 31; Freeman v. Truax, 103 W. Va. 132, 136, 136 S. E. 697; Kanawha Nat. Bank v. Coal Corporation, 107 W. Va. 397, 148 S. E. 383, and authorities cited on page 401. That intention as stated in the sales contract was that the furnace 'shall remain personal property' until paid for, with the right of removal in case of default in payment. The weight of modern authority upholds such a contract as against a prior secured

creditor; particularly when he advanced nothing on the faith of the annexation and the chattel annexed may be detached without impairing the creditor's original security. Bronson, supra, § 29 (a); 26 C. J. p. 684, § 49; 11 R. C. L. p. 1066, § 9. The furnace was not paid for, so personal property it remained with the legal title in the defendant. The clause in the contract as to the seller's right in case the property be sold is merely cumulative, and does not displace the express designation of the status of the furnace.

"It is settled law that the purchaser at a trustee's sale of realty acquires all the title of the grantor at the time of making the trust deed together with any after-acquired right secured by him which has inured to the benefit of the secured creditor. 3 Jones on Mortgages (8th Ed.) § 2122, pp. 623-625; 41 C. J. 996. The title acquired by the Mosemans under the conditional sales contract was only a special equitable property right in the furnace. Cook v. Ins. Co., 105 W. Va. 375, 376, 143 S. E. 113, 61 A. L. R. 657. That equitable right, but not the furnace itself, became subject to the deed of trust in favor of the plaintiff. Hurxthal's Ex'x v. Hurxthal's Heirs, 45 W. Va. 584, 586, 32 S. E. 237; 1 Jones, supra, pp. 711, 712, and cases there cited. Consequently, the interest in the furnace which passed to the plaintiff as the purchaser at the trustees' sale was merely the special equitable right therein of the Mosemans.''

In view of the contract between Mrs. Brough and the Holland Furnace Company, the testimony in the case, and the authorities above cited, we consider that it was error for the court to find that the heater was a fixture and to adjudge that the defendant was "entitled to the possession of and property in" it. The finding and judgment were contrary to both the law and the evidence in the case.

In defendant's answer, it was alleged, referring to his mortgage on the premises, that "at the time of said mortgage and until thereafter removed by this plaintiff there was installed in said dwelling house on said mortgaged property a coal burning hot air furnace the same being

attached to and a fixture in said dwelling and adapted and adequate for the heating of said dwelling, of the value of $200.00.'' The only proof in the record relative to these allegations seems to have been the testimony of Mrs. Brough, given on behalf of the plaintiff, that ''the old furnace couldn't be used'' and that ''I had to put in a new furnace, and other repairs had to be made on the place, and the place was all run down, and I was forced to put in this new furnace.'' This testimony was given without objection. The record shows, also, as previously stated, that plaintiff removed the old furnace. What became of it or its value, other than may be surmised from Mrs. Brough's testimony above mentioned, is not in evidence. In Jones v. Parker, 39 Wyo. 423, 273 Pac. 687, 689, this court said:

''It is claimed that no set-off is permissible in a replevin action. That is the general rule which sometimes is stated without qualification, as in the excerpt from Blue Valley Bank v. Bane, 20 Neb. 299, 30 N. W. 64, quoted in Schlessinger v. Cook, 9 Wyo. 256, 265, 62 Pac. 152. Where, however, the right of plaintiff to possession depends on the existence of an indebtedness, it is competent for the defendant to show that the debt was paid or otherwise extinguished at the time the action was commenced. Schlessinger v. Cook, supra.''

In Hill v. Sewald, 53 Pa. St. 271, 91 Am. Dec. 209, where old boilers were taken out of a mill and others substituted under a lease agreement, the action being one against the mortgagees to recover the substituted property, holding that the plaintiff should succeed in the case, relative to the change made in the property, the court said:

''The fact that the old boilers of Snodgrass were taken out, does not change the state of the case. That might have been waste, for which the Sewalds had their remedy under the Act of 29th March 1822, though the proof in this case shows that they were worn out and unfit for

service, and for this reason the boilers in question were hired of Hill. But this gave the mortgagee no lien on the boilers put in their place, unless they were incorporated into the realty. This, then, is the question.''

See, also, Davis v. Bliss, 187 N. Y. 77, 79 N. E. 851, 10 L. R. A. (N. S.) 458.

In National Cash Register Company v. Cochran, 22 Pa. Super. Ct. 582, it appeared that Cochran owned a hotel which he had leased to one Tomb. In the hotel was a cash register, the property of the hotel owner, but also leased with all the other personal property in the building, to Tomb. Thereafter, the latter purchased a new cash register from the National Cash Register Company, under a lease and sale agreement, reserving title in the vendor until the article was paid for. The old cash register was turned over by Tomb to the vendor on account of the purchase price of the new one. Subsequently, Tomb was obliged to surrender his lease to the owner of the hotel and with it went the new cash register. Upon demand by the vendor, Cochran declined to return the machine until the old one was returned. A replevin action was brought by the seller. The trial court allowed evidence to be given in regard to the old cash register and its value, and the jury were permitted to set off the value of the old one against the value of the new one, the title to which had never passed from the company. Holding that this was error and reversing the case, the reviewing court said:

''In our opinion all of the evidence in regard to the old cash register above referred to ought to have been excluded or withdrawn from the jury. If the defendant owned the old cash register at the time Tomb delivered it to the plaintiff and received credit therefor on his contract of bailment, he, the defendant, is not without remedy. Of course if he never parted with his title and did nothing to estop him from setting it up, it cannot be argued that he has not a right of action to recover the

same or its value. What is here decided is that he could not interpose this matter as a defense in the action of replevin to recover the value of the cash register leased or bailed to Tomb.''

Cobbey on Replevin, 2d Ed., § 791, says:

''Accounts cannot be adjusted or settled in a replevin action. The action of replevin sounds in tort, and it cannot be turned into an equitable action for the adjustment of accounts between the parties; but where the claim of the plaintiff is based upon the fact that a certain sum is due him, it is permissible to show that nothing is due him, and consequently he has no right of possession.''

And the same text, in § 792, remarks:

''Set-off is not usually allowed in replevin, and generally such claims for recoupment must be closely confined to claims growing out of the same subject-matter.''

Mr. Pomeroy, in his Code Remedies, 5th Ed., § 643, discussing the code right of counter-claim in an action to recover possession of chattels, says:

''If a counter-claim can be interposed in this suit, it must be either (1) a demand for money, or (2) a demand for the possession of certain other and different chattels, or (3) a demand for some kind of equitable relief. A counter-claim for money could not be admitted under the principle established by the cases, that the relief must have *some* connection with that asked for by the plaintiff, and must tend to diminish or modify it in some manner. A judgment for money obtained by the defendant could not interfere with or be *counter* to a judgment awarding possession of chattels to the plaintiff. The same difficulties attend the second alternative. It seems impossible that when the plaintiff seeks to recover possession of certain specific chattels, the defendant's right to the possession of other and distinct articles could arise out of the same transaction which is the foundation of the plaintiff's claim or could be connected with the subject of the plain-

tiff's action. The 'transactions,' which are the foundations of their respective causes of action, must, from the very nature of the case, be different. It is not pretended that the action, or the cross-demand, is based upon contract. And, finally, the relief granted to the defendant would be entirely independent of that conferred upon the plaintiff; the two would be complete and entire each by itself, and thus there would be in effect two judgments, not modifying or interfering with each other, and not relating to the same subject-matter. This reasoning, and the conclusion reached by it, have been sustained by judicial decision, and thus seem to be supported alike by principle and by authority. It is possible, perhaps, though hardly probable, that equitable relief may, under certain exceptional circumstances, be recoverable by the defendant in an action similar in its nature and object to the ancient replevin or detinue. Courts of equity, however, very rarely interfered in controversies concerning the title to and possession of chattels.''

In the note to the text, concerning the first alternative mentioned by the author, however, it is suggested that plaintiff's right of possession might depend on defendant's failure to pay a sum of money and the latter could defeat the action by showing that nothing was due. Jones v. Parker, supra.

In view of these authorities, we are not inclined to think that the legal rights arising from the removal of the old furnace by the plaintiff could be litigated in this action of replevin. A judgment in favor of the plaintiff, for the possession of the furnace in controversy, would in no way be affected by a judgment against it in favor of defendant on account of damages for waste because of removing the old coal burning heater. The two judgments would be entirely separate and distinct. Where a replevin action is allowed to proceed as one for damages as the law provides under certain circumstances, it may be that a counter-claim of the nature here under consideration would be proper. Commercial Credit Co. vs. Stanley, 262 S. W. 318, 164 Ark. 473.

Accordingly, we do not undertake herein to foreclose any proceedings that may be taken by the defendant relative to any rights he may have on account of the removal of the coal furnace originally in the house. It is clear that defendant's mortgage covered that chattel, and that plaintiff was charged with knowledge of this fact. If the old heater was of any substantial value at all, its removal impaired his security to that extent and was waste for which he should have his remedy. This is true, notwithstanding plaintiff has placed in the house registers, piping, and other fittings, impracticable to be removed without injury to the building, and apparently of the value of some four hundred dollars.

Our conclusion is that the judgment of the District Court must be reversed with directions to enter a judgment for the plaintiff.

*Reversed.*

KIMBALL, Ch. J., and BLUME, J., concur.