# SCHOOL DISTRICT NO. 11, LARAMIE COUNTY, ET AL. v. DONAHUE

(No. 2146; January 9, 1940; 97 Pac. (2d) 663)

For the appellant, there were briefs and oral argument by *Charles E. Lane* of Cheyenne.

For the respondent, there was a brief by *Greenwood & More* of Cheyenne, and oral argument by *Walter T. More.*

RINER, Chief Justice.

This case, a direct appeal proceeding, brings here a controversy between the parties in regard to a small school building as it is affected by a judgment of the district court of Laramie County, Wyoming, in favor of School District No. 11 of said County, W. J. Hixenbaugh, Paul Rinehart and A. J. Wilson, as trustees of said School District, plaintiffs and respondents, and against John Donahue, defendant and appellant. The facts required to be considered at this time in view of the judgment in favor of the plaintiffs are in substance these:

The school building in question was erected by School District No. 5 of said Laramie County, and when School District No. 11 was created out of a portion of said District No. 5, this structure was turned over to and became the property of District No. 11, some ten or twelve years before March 1, 1939.

The building seems to have been located on the Southwest Quarter of Section 11, Township 18, Range 63, having been so located about eight years previous to the date last above set forth by the defendant Dona-

hue, at the direction of two members of the then School Trustees of said School District No. 11. This arrangement was satisfactory to Donahue and conveniently located for his children to attend school therein. This school building was merely set upon the ground, with no foundation under it. The land upon which it was placed appears not to have been owned by the defendant Donahue, but by his wife, Pauline, she having purchased it about June 28, 1929. It is a fair inference that the land is, however, used as a part of the Donahue ranch property.

On June 21, 1938, School District No. 11 held its annual meeting, and it was voted at that time and at that meeting to move said building "half way between the E-7 Ranch and the Donahue house." July 9, 1938, Donahue submitted to the District a written bid, for a stated sum, to move the school building from its present location to the new one designated by the School District meeting. This offer, it seems, was not accepted by the officials of School District No. 11, and when they subsequently and prior to August 20, 1938, went to see Donahue and arrange for his permission to enter upon the land and move the building to the new proposed site, Donahue declined to allow them so to do without a "court order." His wife appears not to have objected in any way to the removal of the school building. When the officials of the District discovered that the building owned by it could not be made available for the school term of 1938-39, they caused another smaller temporary frame structure owned by said District to be transferred to the proper location, and this appears to have been used during the school year aforesaid for the purpose of conducting school therein, enabling the District to "get by" through its use, although the commencement of school was in consequence delayed some two weeks and two days.

Thereafter and about August 20, 1938, the plaintiffs

instituted suit against Donahue, praying that an injunction be issued restraining him from interfering with the due removal of said school building from its present location to that designated by the vote at the meeting of the District held the preceding month of June, as above related. Defendant filed his answer in response to this pleading and plaintiffs a reply thereto.

The defendant contends that an injunction may not be sought in a case of this kind and that this remedial process may not be employed to transfer the possession of real or personal property from one party to another, and refers us to the decisions of this court in Casper, Wyoming, Theaters Co. et al. v. Rex Investment Co., 37 Wyo. 357, 261 P. 908, and Alaska Development Co. v. Brannan, 40 Wyo. 106, 275 P. 115. We do not consider these cases to be in point in this litigation for several reasons. They presented no such factual matters as are now at bar. Under all the circumstances in this case, we think it evident that the school house in question was never affixed to the realty where it was placed so as to become a part thereof.

In O'Neil v. Quilter, (Tex. Civ. App.) 236 S. W. 116, it was held that there is a presumption that a dwelling house erected upon land by a temporary tenant or licensee is personal property and belongs to the tenant, who may remove the same, and that the intent of the party constructing the building controls as to the right of removal. See also Rogers v. Vanderbilt, 175 Ark. 977, 1 S. W. (2d) 71; Pennington v. Black, 261 Ky. 728, 88 S. W. (2d) 969.

Said the court in Carlin v. Ritter et al., 68 Md. 478, 13 A. 370, 16 A. 301:

"From the testimony, the ice house appears to be simply a wooden structure or building resting by its own weight on flat stones laid upon the surface of the ground. The earth was not excavated for the purpose of holding the ice, nor was there any other foundation

for the building than the stones referred to. Wansbrough v. Maton, 4 Adol. & Ellis, 884, was a case where a wooden barn was erected on a foundation of brick and stones let into the ground, on which the barn rested by weight alone, and all the Judges of the King's Bench held it was not a fixture at all. Lord Denman, C. J., said:

" 'Questions as to fixtures generally arise between the prima facie right of the landlord on the one hand, and exceptions in favor of trade or of tenants on the other. But the first question must be whether the erection be a part of the freehold. If it be not united to the freehold we cannot say that it is a part of it; and here it is not so united and, therefore, not a fixture.' Many other authorities to the same effect might also be cited, but we deem this one sufficient. The cow stable and carriage covering seem also to be wooden structures of the same character, and not more united to the freehold than the ice house."

In Bond Investment Co. v. Blakeley, 83 Cal. App. 696, 257 P. 189, it was indicated that whether structures were permanent fixtures on land must usually be determined from the particular facts of each case, and this we take to be a reasonable and safe rule in regard to matters of that character.

It is plain also that in Alaska Development Company v. Brannan, supra, this court was discussing the subject of "ordinary personal property" only. In the case at bar we have a situation involving public property, i. e., a school house. The defendant, Donahue, testified that he had never occupied or used it and that he had never attempted to exercise any authority over it. It was not upon his land, and his wife had never made any claim to it. It would, therefore, seem clear that the structure was personal property, and that the school district was at all times in possession thereof, notwithstanding the fact that actual school work in the building had been temporarily discontinued over several school terms. Under such circumstances, it is evident that the School District, being a mere tempo-

rary tenant or licensee, so far as the location of the building is concerned upon the land where it was placed, it had an implied right to remove such building at any time it saw fit to do so. Indeed, as hereinbefore indicated, Donahue himself, in writing over his own signature, offered to move the building from his wife's land to the place designated by the School District, if the latter would pay the price he bid for so doing. The fact that the District declined his offer assuredly did not affect the legal relation of the parties relative to the status of the school building. Of course, in removing the structure, if any actual injury should be done the real property over which it might be required to be taken in the process of removal, the District would necessarily be responsible for that.

So far as the right to invoke the extraordinary writ of injunction to restrain Donahue from interfering with the removal of this building from his wife's land is questioned, it is readily perceived that such use was under the facts appearing here, quite proper.

32 C. J. 271-272, citing many cases, declares that:

"An injunction may issue to prevent a diversion of the use of public property from the use to which it was dedicated";

and that:

"An injunction will issue to restrain any unauthorized appropriation of public property."

Where persons dissatisfied with the election of school directors by force and intimidation undertook to exclude the regularly appointed teachers from school buildings and to control the use of the buildings, in holding that injunction proceedings could rightfully be maintained by the School District against such persons, in Kline Township School District et al. v. Mc-

Aloose et al., 317 Pa. 266, 176 A. 435, the court said:

"Under such circumstances the award of the injunction was not only proper but imperative. Appellants' contention that this proceeding is an attempt to have the court determine collaterally the right and title to the offices of school director, is entirely without foundation. The injunction proceedings did not and could not settle the question of the right of Natora and Sekerak to hold office. That matter will be determined by the election contest in due time. What the injunction does decide, however, is that defendants, regardless of the strength of their claim to the disputed offices, cannot take the law into their own hands and by force and intimidation obtain control of the school buildings or exclude the regularly appointed teachers."

In Hill et al. v. Houk et al., 155 Ala. 448, 46 So. 562, it appeared that the holders of the legal title to certain property had dedicated it to a school district for school purposes; thereafter they undertook to reassert their control over such property. An injunction was sought and granted officials of the district enjoining such holders from using or controlling said property except for the purposes of the dedication and its use by legally authorized school officers. Affirming the decree to that effect made by the trial court, the appellate tribunal used this language:

"The bill is clearly not one for the specific performance of a verbal contract for the sale of land, nor for the enforcement of a parol gift of land, but for the protection of a public easement, to the end of preventing a diversion of the use of the property from the one to which it was dedicated. The equity of the bill is beyond serious controversy. City of Demopolis v. Webb, 87 Ala. 666, 6 South. 408; 4 Pom. Eq. Juris. §§ 1350, 1351, and notes; High on Injunctions, § 855; 14 Cyc. p. 1216; 22 Cyc. p. 898. Under the act 'to provide for the redistricting of the public schools of the state and for the management and control of same' (Gen. Laws 1903, p. 289), the district trustees are charged with the care of all school property, and the

title to all such property is vested in them, and concurrently with the county board of education they are charged with the further duty of employing teachers and of making use of the property for school purposes. As representatives of the public it is their duty to conserve the right of the public to the use of public school property for public school purposes and to prevent the diversion or destruction of that use; and to accomplish this end these officers have the same right to resort to the chancery court for injunctive relief, when necessary, as the proper municipal officers of a city have, or the Attorney General of a state has, when the rights of the people of the city or state are invaded. The right to bring bills of this character, in municipal officers and in the Attorney General of this state, has been fully recognized by this court. City of Demopolis v. Webb, supra, and cases there cited; Reed v. Mayor & Aldermen of Birmingham, 92 Ala. 339, 9 South. 161; Attorney General v. Lakeview Land Co., 143 Ala. 291, 39 South. 303. See, also, High on Inj. §§ 1554, 1555."

See also Board of Education of Wayne Township v. Shaul et al., 4 Ohio N. P. N. S. 433-446; Cuba Consolidated School District No. 1 v. Fox et al., 79 S. W. (2d) (Mo. App.) 772; Sections 99-317, 99-323, W. R. S. 1931. Additional and somewhat analogous cases, involving church property, for example, German Evangelical Cong. of New Elm v. Hoessli, 13 Wis. (star page) 348; Christian Church et al. v. Sommer, 149 Ala. 145, 43 So. 8, 8 L. R. A. (N. S.) 1031; Brundage v. Deardorf. 55 Fed. 839, might be cited.

In the case before us, it appears that the School District has been prevented by the conduct of the defendant, Donahue, from using school district property, the building in question, for school purposes. His refusal to allow that building to be moved has resulted in some two weeks of school being lost from the school year before the temporary structure, which the trustees were obliged to substitute in lieu of the building owned and planned by the District to be used, could be put in the place as ordered by the district meeting. It

would appear that irreparable damage and interference with the use of public property have both been established.

It is also claimed by appellant that the trial court committed error in declining to hear evidence of alleged damage suffered by him due to the act of the trustees of the School District in inserting in plaintiffs' pleading a charge that the defendant was insolvent. In this connection it may be noted that this allegation in the petition was, upon defendant's motion, ordered struck out. Just why this was done is not altogether clear. We cannot give our assent to this claim of appellant. A sufficient answer among several that might be suggested to the contention thus made appears in the language of Chief Justice Shaw in Hoar v. Wood, 3 Metc. 193, where he said:

"Then we take the rule to be well settled by the authorities, that words spoken in the course of judicial proceedings, though they are such as impute crime to another, and therefore if spoken elsewhere, would import Malice and be actionable in themselves, are not actionable, if they are applicable and pertinent to the subject of inquiry. The question, therefore, in such cases is, not whether the words spoken are true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relevant and pertinent to the cause or subject of inquiry."

Commenting on this statement, the Supreme Court of Washington in Abbott v. National Bank of Commerce of Tacoma et al., 20 Wash. 552, 56 P. 376, said:

"The authorities which support this proposition are so numerous that we will undertake to cite only a few of the leading and more recent cases:" (Citing many authorities.)

Relative to the pertinency of an allegation of insolvency in injunction suits see 32 C. J. 332, Sec. 545, and cases cited.

230

Accordingly the judgment of the district court, enjoining the defendant and all persons claiming under him from interfering with the plaintiffs in removing said school building from where it is at present located to the place where the School District meeting, aforesaid, directed it to be moved, is affirmed.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.