2001 WY 1

**AMOCO PRODUCTION COMPANY,**
Appellant (Petitioner),

v.

**WYOMING STATE BOARD OF EQUALIZATION; Edmund Schmidt, in his official capacity as Chairman, Board of Equalization; Roberta A. Coates, in her official capacity as Vice Chairman, Board of Equalization; Ronald Arnold, in his official capacity as a member of the Board of Equalization; and Darrell Stubbs, in his official capacity as Carbon County Assessor, Appellees, (Respondents).**

No. 00–17.

Supreme Court of Wyoming.

Jan. 5, 2001.

Rehearing Denied Jan. 31, 2001.

Representing Appellant: John L. Bordes Jr. of Oreck, Bradley, Crighton, Adams & Chase, LLC, Boulder, Co. Argument by Mr. Bordes.

Representing Appellee: Thomas A. Thompson, Carbon County Deputy Civil Attorney, Rawlins, WY. Argument by Mr. Thompson.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

[¶ 1]   Amoco Production Company (Amoco) challenges the assessment and taxation of underground oil flow lines as personal property. We find that the Carbon County Assessor properly categorized the flow lines as personal property and, therefore, we affirm the decision of the State Board of Equalization (State Board) confirming that decision.

## ISSUES

[¶ 2]   Amoco presents the following issues:

1. Was the Decision of the State Board of Equalization Supported by Substantial Evidence?
2. Was the decision of the State Board of Equalization contrary to the weight of the evidence in the record?
3. Was it arbitrary, capricious and an abuse of discretion when the State Board of Equalization failed to provide

cogent reasons and supporting citation to the record for Conclusion of Law No. 32?

4. Did the State Board of Equalization commit reversible error when it made findings of ultimate fact contrary to the basic facts in the record?

5. Is the decision of the State Board of Equalization concluding that Amoco failed to show adaptation or objective intent under the three-part test for fixtures contrary to the weight of the evidence?

6. Was it arbitrary, capricious and an abuse of discretion when the State Board of Equalization failed to apply the definition of "real property" in *WYO. STAT. §* 39–1–101(a)(xiv)?

7. Did the State Board of Equalization commit reversible error when it determined underground flow lines remained personal property based on historical filings?

8. Did the State Board of Equalization commit reversible error when it held at Conclusion of Law No. 17 that the Department of Revenue was required to assess as part of the mining claim all real property pursuant to *WYO. STAT. §* 39–1–303(a)(xxi)?

9. Does the decision of the State Board of Equalization result in an "illegal["] tax under *WYO. STAT. §* 39–4–101(b)?

10. Is the decision of the State Board of Equalization contrary to Wyoming Case Law Addressing fixtures?

11. Does the decision of the State Board of Equalization *violate Section 3, Article 15, Wyo. Const?* [sic]

12. Does the decision of the State Board of Equalization result in double taxation in violation of the equal protection clause guaranteed by the United States Constitution and the Wyoming Constitution?

The Carbon County Assessor condenses the matter into a single issue:

Whether the Wyoming State Board of Equalization's decision and order that flow lines are not fixtures is supported by substantial evidence and not contrary to law.

## FACTS

[¶ 3] The facts are undisputed. Amoco owns interests in oil-producing wells in Carbon County that underlie federal lands. Amoco laid flow lines underground to collect the oil produced by its wells. Historically, Amoco and all other producers have included buried flow lines in their reporting of taxable personal property. In 1998, Amoco filed its report of personal property located within Carbon County with the county assessor omitting its flow lines. The county assessor rejected Amoco's treatment of the flow lines and included them in his assessment as taxable personal property. Amoco objected to the assessment and filed a protest with the Carbon County Board of Equalization.

[¶ 4] A contested case hearing was held before the Carbon County Board of Equalization on July 20, 1998. Amoco contended that the flow lines were permanent improvements to the land and should be exempt from local assessment. Amoco presented evidence at the hearing before the County Board demonstrating that the burying of the flow lines was necessitated by technical reasons. Amoco noted that the flow lines were necessary for continued production from the field. Flow lines are generally left in the ground after well production has concluded due to the costs associated with removing the pipe and repairing the environment. Nevertheless, the County Board concluded that the flow lines were personal property and subject to local assessment. Amoco appealed that determination to the State Board of Equalization, which concluded that the flow lines did not improve the value of the real property and, therefore, were not fixtures or part of the land but were personal property. Amoco appealed that decision to the district court, which, in turn, certified the matter to this Court pursuant to W.R.A.P. 12.09.

## STANDARD OF REVIEW

[¶ 5] We review agency decisions pursuant to the dictates of Wyo. Stat. Ann. § 16–3–114(c) (LEXIS 1999):

To the extent necessary to make a decision and when presented, the reviewing

court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

We recently summarized our standards for reviewing the factual and legal conclusions of an agency:

When faced with contested issues of fact, we examine the entire record to determine if the agency's findings are supported by substantial evidence. *Laramie County Board of Equalization v. Wyoming State Board of Equalization*, 915 P.2d 1184, 1189 (Wyo.1996). If they are, we do not substitute our judgment for that of the agency and will uphold the factual findings on appeal. *Id.* Substantial evidence is more than a scintilla of evidence; it is evidence that a reasonable mind might accept in support of the conclusions of the agency. *Id.* Borrowing from the Third Circuit Court of Appeals, we have articulated the difference between findings of basic fact and ultimate fact as follows:

"Basic facts are the historical and narrative events elicited from the evidence presented at trial, admitted by stipulation, or not denied, where required, in responsive pleadings. Inferred factual conclusions are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts. No legal precept is implicated in drawing permissible factual inferences. But an inferred fact must be distinguished from a concept described in a term of art as an 'ultimate fact.' So conceived, an ultimate fact is a mixture of fact and legal precept...."

*Union Pacific Railroad Company v. Wyoming State Board of Equalization*, 802 P.2d 856, 860 (Wyo.1990) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Company*, 669 F.2d 98, 102 (3rd Cir .1981) (citations omitted)).

If a conclusion of law is in accord with the law, it is affirmed. *Id.* We consider three distinct possibilities when reviewing agency determinations on questions of law. *Id.* If the agency correctly applied its findings of fact to the correct rule of law, the agency's conclusions are affirmed. *Id.* However, if the agency applied its findings of fact to the wrong rule of law or if the agency incorrectly applied its findings of fact to the correct rule of law, we correct the error. *Id.*

When an agency's determinations contain elements of law and fact, we do not treat them with the deference we reserve for findings of basic fact. *Id.* When reviewing an "ultimate fact," we separate the factual and legal aspects of the finding to determine whether the correct rule of law was properly applied to the facts. 802 P.2d at 860–61. We do not defer to the agency's ultimate factual finding if there was an error in either stating or applying the law. 802 P.2d at 861.

*RT Communications, Inc. v. State Board of Equalization*, 11 P.3d 915, 920 (Wyo.2000). The resolution of this case requires us to apply our rules of statutory interpretation:

Our rules relating to the interpretation of statutes demand that we abide by the plain meaning of the statute if its language is clear and unambiguous. The statute will be construed as a whole with the ordinary and obvious meaning applied to words as they are arranged in paragraphs, sentences, clauses and phrases to express the intent of the legislature. In analyzing the clarity or ambiguity of the statute, we turn to the guidance of grammarians.

11 P.3d at 922 (quoting *Peterson v. Wyoming Game and Fish Commission,* 989 P.2d 113, 117 (Wyo.1999) (internal citations omitted)).

### DISCUSSION[1]

[¶ 6] While Amoco has chosen to frame its arguments in the context of several issues, each of its positions are, in reality, predicated on the same basic contention: The flow lines are fixtures making them a part of the real estate on which they are located. Amoco contends that the flow lines are fixtures or appurtenances to the real estate by virtue of their permanent internment in the soil. Amoco claims that the flow lines clearly benefit the real estate on which they are located through the production of the oil underlying the property, which would not be possible without the lines. Thus, Amoco argues that since the flow lines are part of the real estate, the county cannot assess and tax them as personal property.

[¶ 7] Under Wyoming's tax laws, there are three types of property: intangible personal property, real property, and tangible personal property. The flow lines are clearly not intangible personal property, *see RT Communications,* 11 P.3d at 922, so that only the latter two types are relevant to this discussion. 'Real property' is statutorily defined as "land and appurtenances, including structures, affixed thereto[.]" Wyo. Stat. Ann. § 39–1–101(a)(xiv) (Michie 1997) (Repealed 1998). 'Tangible personal property' is a catchall category that includes "property

which is neither intangible personal property nor real property." Wyo. Stat. Ann. § 39–1–101(a)(xv) (Michie 1997) (Repealed 1998). Thus, if the flow lines are not intangible personal property or real property, then they are, by default, tangible personal property.[2]

[¶ 8] The term 'appurtenances' is not defined within the statutes. In its ordinary sense, the term means:

That which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or other easement to land; an outhouse, barn, garden, or orchard, to a house or messuage. (Citation omitted.) *An article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold. A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit,* as in the case of a way, or watercourse, or of a passage for light, air, or heat from or across the land of another.

Black's Law Dictionary, Sixth Ed. 103 (1990) (emphasis added). For the flow lines to be considered appurtenant to the land, then, they must be connected to the land in a manner intended to be permanent, and they must benefit the land.

[¶ 9] In our decision in *Wyoming State Farm Loan Board v. FCSCC,* 759 P.2d 1230 (Wyo.1988), we set forth a test for determining whether an article is a fixture to real property:

This court has not had occasion to discuss this aspect of the law of fixtures for nearly forty-eight years. See School District No. II, *Laramie County v. Donahue,* 55 Wyo. 220, 97 P.2d 663, 664 (1940). When presented with this issue, however, we still rely on the three-part test first set forth in the landmark case of *Teaff v. Hewitt,* 1 Ohio St. 511, 525 (1853):

---

1. Title 39 was the subject of recodification in 1998. *See* 1998 Wyo. Sess. Laws ch. 5, § 1. All references are to the statutes in effect at the time of the assessments, which were prior to the effective date of the amendments.

2. Certain items of tangible personal property are exempt from taxation. *See* Wyo. Stat. Ann. § 39–1–303(a)(xxi) (Michie 1997) (Repealed 1998). Amoco specifically waived any claims to an exemption in front of the County Board and in its brief on appeal.

"It has been said upon abundant authority that, generally speaking, the proper criterion of an irremovable fixture consists in the united application of three tests, viz:

" '1st. Real or constructive annexation of the article in question to the realty.

" '2d. Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

" '3d. The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use of which the annexation has been made.' [Citations.] * * *."

*Holland Furnace Co. v. Bird*, 45 Wyo. 471, 21 P.2d 825, 827–828 (1933).

Although all three parts of this test bear upon classification of chattels as fixtures in any given case, we follow a majority of jurisdictions in placing the most emphasis on the intention of the person making the annexation. *Holland Furnace Co. v. Bird*, supra at 828; Squillante, *The Law of Fixtures: Common Law and the Uniform Commercial Code, Part I: Common Law of Fixtures*, 15 Hofstra L.Rev. 191, 195, 201 n. 69 (1987). This intention does not refer to the annexor's subjective state of mind; rather, it is the objective intention the law can infer an ordinary reasonable person to have based on the facts and circumstances in the record. *Holland Furnace Co. v. Bird*, supra, at 827–828; and *Boothbay Harbors Condominiums, Inc. v. Department of Transportation*, Me., 382 A.2d 848, 854 (1978). Circumstances bearing on a determination of objective intent include the nature of the article affixed, the way it was affixed, the purpose it serves on the land and the annexor's relationship to the article and to the land. *Liberty Lake Sewer District No. 1 v. Liberty Lake Utilities Company, Inc.*, 37 Wash.App. 809, 683 P.2d 1117, 1120 (1984).

759 P.2d at 1234–35. We conclude that this test is adaptable for use to determine whether an article is appurtenant to the real estate for purposes of determining if that article is taxable as land or personal property under sections 39–1–101(a)(xiv) and (xv). While fixtures and appurtenances may not necessarily be interchangeable terms, the test devised to determine if an article is a fixture essentially incorporates the same elements constituting an appurtenance. For example, the requirement that an appurtenance benefit the land to which it is attached is implied in the second and third parts of the fixture test. Therefore, to determine if the flow lines are appurtenant to the real estate, we look to determine whether: (1) the object is connected or attached to the realty; (2) the appropriation or adaptation of the object is related to the use or purpose of that part of the realty to which it is connected or attached; and, (3) the party making the attachment or connection objectively intended a permanent accession to the freehold with that intention being inferred from the nature of the object affixed, the purpose it serves on the land, and the party's relationship to the object and the land.

■ [¶ 10] In applying this test to the present case, we conclude that the State Board was correct in upholding the assessment of the flow lines as tangible personal property. The problem with Amoco's position arises in the context of the final two prongs of the test and rests with the nature of the flow lines. The flow lines were put into place for the sole purpose of transporting oil from the wells underlying the land. Without the presence of that oil, it is extremely unlikely that the flow lines would have been placed under the land. The flow lines bear only an incidental relationship to the land itself. This fact is highlighted by Amoco's own admission that when the wells are no longer productive, the flow lines will be sealed and left in the ground. As Amoco's own witnesses testified, in the absence of the oil, the flow lines are not even worth anything as salvage scrap. In fact, it is arguable that the flow lines have a negative impact on the land itself given their potential environmental impacts.

[¶ 11] If not with the land, where then do the benefits of the flow lines lie? By their very nature, the flow lines benefit, if anything, the *mineral estate*. Furthermore, it benefits the mineral estate only *after* the minerals have been extracted from the land as transport to a collection point. The State Board implicitly recognized this concept in its order:

> There is more than substantial evidence in the record demonstrating that flow lines do not improve the value of the real property and in fact are useless once production ceases. Clearly, [Amoco] did not intend to enhance the value of the real property by installing flow lines nor did [Amoco] intend to enhance the beauty or utility of the real property. The flow lines were mere items of personal property intended for the use for which they were installed, i.e., increasing the ability of [Amoco] to economically produce minerals.

We agree with the State Board. The flow lines provide no benefit to the land itself. Instead, they benefit the mineral estate. We think the very fact that Amoco intends to leave the flow lines in the ground permanently actually weighs against its argument since the presence of those lines could only have a negative impact on land use. Therefore, we conclude that the latter two prongs of the test outlined above counsel in favor of the State Board's position that the flow lines are not appurtenant to the land and, accordingly, are tangible personal property. If the flow lines are appurtenant to anything, it is the mineral estate. However, Amoco did not raise that subject, and there is no statutory exemption from taxation for tangible personal property appurtenant to a mineral estate.

## CONCLUSION

[¶ 12] Amoco's flow lines do not provide any benefit, nor does their intended purpose even relate, to the land. The State Board correctly held that the lines were tangible personal property. Affirmed.