2008 WY 11

**Coray MILNES, Personal Representative of the Estate of Shirley M. Milnes, Probate No.2005–22, Eighth Judicial District, Platte County, Wyoming and Coray Milnes, personally, Appellants (Defendants),**

v.

**Jesse J. MILNES, Appellee (Plaintiff).**

No. S–07–0123.

Supreme Court of Wyoming.

Feb. 1, 2008.

Representing Appellant: Douglas Fowler, Cheyenne, Wyoming.

Representing Appellee: Don W. Riske and Sean C. Chambers of Riske, Salisbury & Kelly, P.C. Argument by Mr. Chambers.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶1] Appellant, Coray Milnes (Coray), seeks review of the district court's order that settled several disputes which arose over the estate of Shirley M. Milnes (Mother), largely in favor of Appellee, Jesse J. Milnes (Jesse). Coray and Jesse are brothers and Shirley Milnes was their Mother. Coray asserts that the district court erred as a matter of law in concluding that the Mother's manufactured home was real property, rather than personal property that was an asset of her estate. He also contends that Jesse did not present sufficient evidence so that the district court could find that his AT & T Credit Card bill (hereafter, "credit card") was a legitimate creditor's claim against his Mother's estate. Finally, Coray contends that the district court erred by concluding that the remaining $2,500.00 balance of a "gift" made to him by his Mother was actually a "loan" and, therefore, an asset of her estate. We will affirm.

## ISSUES

[¶2] Coray Milnes states his issues as follows:

A. After the review of evidence, did the district court commit an error of law by concluding that the manufactured home of

Shirley M. Milnes was real property and not an asset of her estate?

B. Was sufficient evidence presented by [Jesse] to allow the district court to include [his] AT & T Universal Credit Card statement to be a creditor's claim against the estate?

C. Did the district court err in its fact-finding to include the $2,500 debt of [Coray] as an asset of Shirley M. Milnes's estate?

Jesse Milnes's statement of the issues readily corresponds with that presented by Coray.

## FACTS AND PROCEEDINGS

[¶ 3] Mother died on April 30, 2005, and Coray was appointed as the personal representative of Mother's estate. The parties essentially agree to the basic facts. The disagreements between Coray and Jesse result from the manner in which the district court applied the law to those facts.

[¶ 4] The big item in this case is the real property that Mother owned. That 80–acre parcel of property straddled the border of Platte and Albany Counties (half of it in Albany County, and the other half in Platte). On August 4, 2004, Mother signed a quitclaim deed transferring the real property to herself and Jesse, as joint tenants with right of survivorship. That deed made no special mention of the manufactured home. Mother had moved a double-wide manufactured home onto that property in 2000. There is no question but that Jesse now owns the ground upon which that manufactured home is located. The issue is whether or not it is real property and is included within the intendment of the quitclaim deed Mother gave to Jesse, or if it is personal property that should be considered an asset of Mother's estate and, hence, be equally divided among her heirs. Jesse's evidence included 21 photographs that depict the manufactured home as it looked shortly after Mother's passing. Jesse testified to his view that the home was intended to be affixed to the acreage and, hence, should be found to be real estate. Coray, on the other hand, testified that the manufactured home was not so affixed to the property as to have lost its identity as personal property and, hence, was an asset of

Mother's estate. Coray's theory also relied heavily on the circumstance that it had been taxed by Platte County as personal property for all the years that it was in place.

[¶ 5] The second issue arose because Jesse obtained a credit card so as to consolidate his Mother's credit card debt onto one credit card that was going to be interest free for the first year. The card was issued in both Mother's name and Jesse's name, although all of the debt associated with that card was from the consolidation of Mother's old credit cards or purchases she made once the new credit card was issued. None of the debt on the card was incurred by Jesse. Thus, Jesse submitted it as a creditor's claim, but Coray denied that claim in his capacity as personal representative.

[¶ 6] The third issue arose because Coray claimed that on February 1, 2001, his Mother made a gift to him of $6,000.00, so that he could pay his taxes. A ledger was kept showing that Coray made payments to Mother, from time to time but not with regularity, associated with that "gift." Coray testified that he considered those payments as gifts he made to his Mother in return for her gift, but were not payments on a "loan". Jesse contended it was a loan and asked the district court to include it as an asset of Mother's estate. The evidence to support Jesse's view was just the ledger that was kept, as well as Coray's course of conduct. Coray's evidence was his own testimony to the effect that it was a gift and not a loan.

## DISCUSSION

### Manufactured Home—Real Estate or Personal Property?

[¶ 7] When a matter has been tried before the district court without a jury, the Supreme Court's review of the district court's findings of fact is conducted under the clearly erroneous standard, but conclusions of law are reviewed *de novo*. *Kimble v. Ellis*, 2004 WY 161, ¶ 7, 101 P.3d 950, 953 (Wyo.2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Nickle*

*v. Board of County Com'rs of Platte County,* 2007 WY 115, ¶ 16, 162 P.3d 1208, 1213 (Wyo. 2007).

[¶ 8] The district court concluded that the manufactured home was real property that went with the land on which it was located. That conclusion was based upon these findings:

a. [N]o Certificate of Title for the Home was introduced by [Coray], but [he] did introduce a certificate of origin for a manufactured home;

b. the Home has been taxed as a mobile home by the Platte County Treasurer separate from the tax assessments of the real property, *Exhibits N–1 to N–5, Exhibit K.*

c. there are no axles, wheels, or a hitch attached to the Home;

d. the Home is set on concrete blocks sitting upon poured concrete slabs in the crawl space placed on the real property for such purpose, *Exhibit 6–1; 6–2; 6–3; 6–4 and 6–6;*

e. there are cables attached to the home [which] are bolted into 6″ thick concrete slabs in the crawl space. *Exhibits 6–5, 6–6, 6–8, 6–9.* Witness Jim Parks testified that such manner of attaching tie-down cables was more permanent tha[n] normal mobile home installation required by insurance carriers in the State of Wyoming;

f. the Home has a landscaped yard with trees and fencing around [the] house, *Exhibits 6–12, 6–13, 6–14, 6–17, 6–18, 6–19, 6–20, and 6–21;*

g. there is a permanent, stick-built garage (the "Garage") located with ten (10) ft. from Home, which, it is not disputed, is part of the real property. The Garage was constructed by the decedent within a few months after installation of the Home and used by her during her occupancy of the home. *Exhibits 6–10, 6–11, 6–12, 6–16, and 6–18.*

h. the Home and the permanent Garage appear to be a single living unit;

i. the Home has wood skirting with interior framing and exterior siding to the ground. *Exhibits 6–6, 6–7, 6–14, 6–15, 6–16, 6–17, 6–18, and 6–19;*

j. there are permanent underground utility services installed to the Home;

k. the Home has a permanent exterior rear deck that was constructed and attached to the Home after its delivery and installation, *Exhibit 6–13;*

l. the Home has a permanent rear covered porch that was constructed and attached to the Home after its delivery and installation, *Exhibit 6–10;*

m. the Home has an air conditioning unit permanently installed near the rear covered porch that was constructed next to the Home after its delivery and installation, *Exhibit 6–10;*

n. the Home has permanent gutters and drain spouts installed after the delivery and installation of the Home on the property, *Exhibits 6–10, 6–14 and 6–15;*

o. the Home is located upon an eighty (80) acre parcel of real estate with no other residential structures located upon such parcel; that tract was zoned for placement of cement pads to set a mobile home on;

p. the decedent, Shirley Milnes, resided in the Home from the date of its installation to the date of her final hospitalization, a period of approximately five (5) years;

q. no evidence was introduced indicating that the decedent treated the Home as anything other than her permanent residence;

r. that the insurance coverage for the Home purchased by the decedent included coverage for the permanent Garage. *Exhibit J, Page 3.*

s. in totality, although the Home could have been made moveable, it was permanently attached to the real estate. The evidence as a whole indicates that Shirley intended that the house be a permanent part of the real estate.

[¶ 9] The district court went on to conclude that its factual determination was supported by pertinent law. For example, although Mother had not done so, Wyoming statutes provide that a transportable or mobile home can be converted to real property.

Wyo. Stat. Ann. § 31–2–502(b) (LexisNexis 2007). Ordinarily "mobile homes" like the one at issue are taxed as personal property, and that was true of Shirley's. While this Court has not dealt with the specific issue raised in this dispute, we have recognized a general rule that a chattel, or moveable, may become a fixture that becomes a part of the real estate on which it is affixed. In *Wyoming State Farm Loan Board v. FCSCC*, 759 P.2d 1230, 1234 (Wyo.1988) we opined:

> This court has not had occasion to discuss this aspect of the law of fixtures for nearly forty-eight years. See *School District No. II, Laramie County v. Donahue*, 55 Wyo. 220, 97 P.2d 663, 664 (1940). When presented with this issue, however, we still rely on the three-part test first set forth in the landmark case of *Teaf v. Hewitt*, 1 Ohio St. 511, 525 (1853):
>
> > "It has been said upon abundant authority that, generally speaking, the proper criterion of an irremovable fixture consists in the united application of three tests, viz:
> >
> > " '1st. Real or constructive annexation of the article in question to the realty.
> >
> > " '2d. Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.
> >
> > " '3d. The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use of which the annexation has been made.' [Citations.] * * *." *Holland Furnace Co. v. Bird*, 45 Wyo. 471, 21 P.2d 825, 827–828 (1933).

Also see Wyo. Stat. Ann. § 39–11–101(a)(xv) (LexisNexis 2007) (defining "real property" as "land and appurtenances, including structures, affixed thereto, and any intangible characteristic which contributes to the fair market value thereof"); *Amoco Production Co. v. Wyoming State Board of Equalization*, 2001 WY 1, ¶ 9, 15 P.3d 728, 732–33 (Wyo. 2001); *In re Claxton*, 239 B.R. 598, 34 Bankr.

Ct.Dec. 1323 (U.S. Bankr., Ct. N.D. OK 1999) (mobile home treated as real estate subject to mortgage); 2 Powell on Real Property § 18B.04 (Michael Allan Wolf ed., LexisNexis Matthew Bender & Co.2000) (". . . if the mobile home has substantially lost its identity as a mobile home by virtue of its being permanently affixed to the land, it would be taxed as realty. . . .").

[¶ 10] We hold that the district court's factual findings with respect to the manufactured home are not clearly erroneous and its conclusions of law are correct. More specifically, we do not view the fact that the manufactured home had, historically, been taxed as personal property as determinative of the issue. The district court properly included all relevant facts and circumstances in reaching its decision.

### The Credit Card

[¶ 11] The district court's factual findings with respect to the credit card are brief. The record consists of Jesse's testimony that the credit card was obtained by him, on his Mother's behalf, and that, although he recognized that he bore responsibility for the credit card as well, that responsibility was in addition to the primary responsibility that was his Mother's. The evidence at trial was to the effect that the card was used only for payment of Mother's debts. As personal representative for Mother's estate, Coray denied Jesse's claim in this regard.

[¶ 12] The district court accepted Jesse's testimony as true and ordered that Coray pay that claim. We conclude that the district court's factual findings were not clearly erroneous and that Jesse's testimony, combined with the exhibits that corroborated his testimony, is sufficient to sustain the district court's fact findings. In addition, the district court's application of the law to those facts was not erroneous.

### Coray's Debt to the Estate

[¶ 13] The district court made these findings with respect to the debt:

> [Jesse] included in his Claims Against Estate, a claim that [Coray] had failed to include in the Estate Inventory a debt

owing to the decedent from Coray Milnes. *Exhibit 1, Page 2.* Received into evidence as *Exhibit 14–1* was a check register reflecting payments made to the decedent by "Cor[a]y and Diane" and pages from the check register (*Exhibits 14–2 to 14–5*) showing deposits into the decedent's checking account in the amounts and on the dates shown on Exhibit 14–1. Coray Milnes testified that he received $6,000 from the decedent in February, 2001, to pay his taxes. Coray Milnes claimed that such amount received from the decedent was a gift. Coray Milnes also testified that he had made the payments reflected in Exhibits 14–1 to 14–5 to the decedent to "repay the gift." Coray Milnes admitted that there was $2,500 remaining of the $6,000 received by him from the decedent that had not been repaid as of the date of her death. Based upon the "repayments of the gift" testified to by Coray Milnes, the Court finds that the installment repayments of the "gift" by Coray Milnes are inconsistent with his claim that the amounts received were a gift. The Court, therefore, finds that such transaction was not a gift; that the remainder of such amount of $2,500 is to be considered and treated an asset of the estate for which

[Coray] is required to collect and include in the Estate Inventory.

[¶ 14] A valid gift consists of three elements: (1) a present intention to make an immediate gift; (2) actual or constructive delivery of the gift that divests the donor of dominion and control; and (3) acceptance of the gift by the donee. *Kenyon v. Abel,* 2001 WY 135, ¶ 10, 36 P.3d 1161, 1165 (Wyo.2001) (citing *Rose v. Rose,* 849 P.2d 1321, 1324 (Wyo.1993)). Based upon our review of the record, we are compelled to conclude that the district court's factual findings are not clearly erroneous. The district court's application of the law to those facts is sound in all respects.

## CONCLUSION

[¶ 15] We conclude that the findings of fact and conclusions of law challenged by Coray are sound and that the district court's Order and Judgment should be affirmed.